See also, D.C., 283 F.Supp. 194.

Anthony T. LEE et al., Plaintiffs,

United States of America, Plaintiff-Intervenor and Amicus Curiae,

v.

MACON COUNTY BOARD OF EDUCATION et al., Albert P. Brewer, in his capacity as Governor of the State of Alabama, and as President of Alabama State Board of Education, et al., Defendants.

Civ. A. No. 604–E.

United States District Court
M. D. Alabama, E. D.

July 19, 1968.

Fred D. Gray (Gray, Seay, Langford & Pryor), Montgomery, Ala., Jack Greenberg and Melvyn Zarr, New York City, for plaintiffs.

Stephen J. Pollak, Asst. Atty. Gen., and Frank D. Allen, Atty. Civil Rights Division, U. S. Dept. of Justice, Washington, D. C., and Ben Hardeman, U. S. Atty., Montgomery, Ala., for plaintiff-intervenor.

MacDonald Gallion, Atty. Gen., and Gordon Madison, Asst. Atty. Gen., State of Alabama, Montgomery, Ala., Maury D. Smith and T. W. Thagard, Jr., (Goodwyn, Smith & Bowman), Montgomery, Ala., for defendants; Vaughan Hill Robison (Hill, Robison, Belser & Phelps), Montgomery, Ala., for the movant, Autauga County Board of Education.

### ORDER

JOHNSON, Chief Judge.

The Autauga County Board of Education, the administrative control agency of one of the 99 school systems under this Court's order of March 22, 1967, is presently before the Court on the

Board's petition for permission to replace and modernize certain classrooms at the Autauga County Training School. The Autauga County Board of Education originally planned five construction projects to be financed with federal funds under Public Law 815, commonly referred to as impacted area funds.[1] Only one of these projects was allocated by the Department of Health, Education and Welfare, and the project listed by the Board as its first priority project was approved; this approval related to twelve classrooms at the all-Negro Autauga County Training School in Autaugaville, Alabama. After consulting with the attorneys for the United States Department of Justice, the State Superintendent of Education advised the Autauga County Board of Education that the project was not approved because it would tend to perpetuate segregation and would therefore be in violation of this Court's order of March 22, 1967. The Board filed the motion now pending. The United States and the plaintiffs urged the Court to deny approval of the proposed construction.

The petition involves the judicial interpretation and, to the facts as presented, the application of certain provisions of the court-approved school desegregation plan under which the Autauga County Board of Education is operating. Section IV A. relates to school equalization and provides as follows:

"*Inferior Schools.* In schools heretofore maintained for Negro students, the school system will take prompt steps necessary to provide physical facilities, equipment, courses of instruction, and instructional materials of quality equal to that provided in schools previously maintained for white persons."

The court-ordered plan in Section V relates to school construction and consolidation and provides:

"To the extent consistent with the proper operation of the school system as a whole, the school board will, in locating and designing new schools, in expanding existing facilities, and in consolidating schools, do so with the object of eradicating past discrimination and of effecting desegregation. The school board will not build, consolidate or expand schools based on recommendations of any state survey conducted prior to March 1967 unless the state reapproves such building, consolidation or expansion. The school board will not fail to consolidate schools because desegregation would result."

The School Board contends that the project is in furtherance of its duty to equalize the physical facilities between schools previously maintained for white and Negro students and as required by Section IV of its desegregation plan. The Government and the plaintiffs contend that the construction violates Section V of the same plan which requires the Board to locate and design new schools, expand existing schools, and to consolidate schools "with the object of eradicating past discrimination and of effecting desegregation." This submission is upon the pleadings, evidence, several exhibits and the briefs of the parties.

During the 1967–68 school year, the Autauga County Board of Education operated thirteen schools; four were previously maintained exclusively for Negroes and are still all-Negro in their student bodies, and nine were previously maintained for whites and are presently predominantly or all white in their student bodies. The Autauga County Board plans to operate ten schools for the 1968–69 school year—three traditionally Negro and seven traditionally white. Since the court-ordered desegregation plan went into effect, a "freedom-of-choice" method of student assignment has been in effect in Autauga County. However, the schools in Autauga County, Alabama, largely retain their

1. 20 U.S.C. § 631 et seq.

racial identity.[2] The Board, however, through Superintendent Hargis, suggested to this Court that if the facilities at the Negro schools are sufficiently improved, there is a possibility that white students may choose to attend the predominantly Negro schools. This is offered as the primary justification for the proposed project. There is also located in Autaugaville, a community of approximately 450 people, the predominantly and traditionally white Hicks Memorial School. The School Board plans to continue operating the two twelve grade schools in the town of Autaugaville. Each of these schools will have an enrollment in the high school grades below the State of Alabama recommended enrollment for the coming year. The Government argues that the available funds should be spent and the efforts of the School Board should be directed toward consolidating the high schools of Autauga County Training School and Hicks Memorial School and also toward consolidating the elementary grades for these schools. The Government says that such use of the available funds for construction and the consolidation of Hicks and Autauga Training would accomplish, to a large extent, the object of "eradicating past discrimination and of effecting desegregation" contemplated by the March 22, 1967, order of this Court.

The evidence in this case also reflects that since the "freedom-of-choice" desegregation plan was put into effect in Autauga County, the only movement of students has been from those schools formerly designated as Negro into the schools formerly designated as white. As stated, there has been no movement of white students to Negro schools. It is true that the physical facilities at the Autauga County Training School have been shamefully inferior. There has been no effort, up until the present time, on the part of the Board to equalize or abandon these facilities at the training school. The Board has undertaken to provide only necessary space for Negro students at this all-Negro school; this additional necessary space has been provided by the use of portable classrooms. As a matter of fact, two portable classrooms were added in the summer of 1967, and the reports available to this Court indicate that three others were added sometime in 1966. The primary plant for the training school is a large, permanent-type brick structure. However, in addition to the portable classrooms, the Board has in recent years also maintained three frame buildings in connection with this Negro school plant. In considering the Board's motion, it is highly significant that the enrollment in the top three grades— grades ten through twelve—at the Hicks Memorial School is only 63, with a total enrollment in all twelve grades at Hicks Memorial of 267. The enrollment in grades ten through twelve at the Autauga County Training School is only 158. If grades ten through twelve at the Autauga County Training School and at Hicks Memorial School were consolidated, there would still be only 221 students in the consolidated grades. It is also significant that the Autauga County Training School and Hicks Memorial School in grades ten through twelve each have an enrollment less than the State recommended minimum of 175 students.

Upon this submission and these facts, this Court concludes that the proposed construction will not comply with the Autauga County Board of Education's affirmative duty to eliminate the racial characteristics of its public school system. There is no evidence offered in this case to support the contention of the County Superintendent of Education that improvements at the Autauga

2. Seventy-nine of 3,003 Negro students attended traditionally white schools for the 1967–68 school year. The County Superintendent of Education testified before this Court in connection with this hearing that for the 1968–69 school year, 114 Negro students had chosen to attend formerly all-white schools. No white student has chosen to attend a traditionally Negro school.

County Training School will probably attract enrollment of white students; the weight of experience is against this. On this problem, the United States Commission on Civil Rights, Survey of School Desegregation in the Southern and Border States, 1965–1966, page 51, concluded that "white students rarely elect to attend Negro schools. * * *" This fact of life was recognized by the United States Court of Appeals for the Fifth Circuit in United States v. Jefferson County Board of Education, 372 F.2d 836 (1966), when it stated:

"* * * In this circuit white students rarely choose to attend schools identified as Negro schools. * * * New construction and the improvements to the Negro school plant attract no white students and diminish Negro motivation to ask for transfer."

The Fifth Circuit in United States v. Board of Public Instruction of Polk County, Florida, 395 F.2d 66 (April, 1968), also recognized this very basic problem with "freedom-of-choice" plans designed to abolish dual school systems based upon race:

"* * * [I]t is rare, almost to the point of nonexistent, that a white child, under a freedom of choice plan, elects to attend a 'predominantly Negro' school."

This practical problem to the effectiveness of "freedom-of-choice" plans was also recognized by the attorneys for the Barbour County School Board in Civil Action No. 2458–N when they recently filed in this court an answer to the Negro plaintiffs' motion for further relief and as a part of the answer stated:

"* * * It is a matter of practical reality that the white parents * * * will not send their children to formerly Negro schools."

This Court would be naive to the point of ridiculousness to accept such a justification for this additional construction and expansion of this Negro school in Autauga County, Alabama. The evidence does not disclose any basis upon which the proposed project can be justified.

Thus, this Court now concludes that the construction of the proposed improvements, in the form of converting temporary substandard rooms to permanent standard classrooms, will tend only to perpetuate the dual school system as that system is based upon race in Autauga County, Alabama. The proposed new construction and improvements to the Negro school plant would not only fail to attract white students, but would, in all probability, diminish Negro motivation to ask for a transfer to a predominantly white school.

Now, as a timely *caveat* to the Autauga County Board:

The reports filed with this Court reflecting the applications received by the Autauga County School Board for the period of 1968–69 from 4,280 white students and 2,242 Negro students show that no white students have requested to attend a school predominantly attended by the opposite race and only 113 Negroes have elected to attend predominantly white schools. This means, from a percentage standpoint, that no percentage of whites has elected to attend a school of the opposite race and that only 5.0 percent of the Negro students have elected to attend a school of the opposite race. The Autauga County School Board should give some immediate and serious consideration to discharging more effectively its affirmative duty under Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083. This is particularly important at this time since the Supreme Court only very recently declared in Green v. County School Board of New Kent County, Virginia, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716, May 27, 1968, that the discharge of this affirmative duty on the Boards of Education requires *more* than the adoption of a "freedom-of-choice" plan of desegregation. There is no formal request in the matter now presented relating to consolidation of Hicks Memorial and Autauga County Training Schools. However, the parties' attention

is directed to a motion now pending—but not yet heard—in this case, whereby the plaintiffs seek to have this Court implement the Supreme Court's decisions in Green v. County School Board of New Kent County, Virginia, supra, and Raney v. Board of Education of the Gould School District of Arkansas, 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727, May 27, 1968. In each of these cases the Supreme Court of the United States held that a "freedom-of-choice" plan had not operated effectively where there were still 85 percent of the Negro children in the system continuing to attend all-Negro schools. The motion to implement *Green* and *Raney* will be set for a hearing at an appropriate time; in the meantime, the Autauga County School Board, as well as the other Boards of Education throughout Alabama, should be appraising its performance and the effectiveness of its desegregation plans in the light of *Green* and *Raney*.

Accordingly, it is the order, judgment and decree of this Court that the motion of the Autauga County Board of Education, seeking leave of this Court to replace certain classrooms at the predominantly Negro Autauga County Training School, be and the same is hereby denied. The decision of the State Superintendent of Education rejecting the proposed project is ordered to be and the same is hereby affirmed.