573 P.2d 149

Rosemary K. BRADFORD, Plaintiff-Respondent,

v.

Owen SIMPSON, Defendant-Appellant.

No. 12340.

Supreme Court of Idaho.

Jan. 4, 1978.

Lloyd J. Walker of Walker & Kennedy, Twin Falls, for defendant-appellant.

E. Lee Schlender of Schlender & Young, Ketchum, for plaintiff-respondent.

BAKES, Justice.

The defendant Owen Simpson appeals from a judgment entered by the district court following proceedings on remand from an earlier appeal to this Court. *Bradford v. Simpson (Bradford I)*, 97 Idaho 188, 541 P.2d 612 (1975). We affirm the judgment of the district court.

In the earlier appeal we concluded that the defendant was liable for flood damage to the plaintiff's property located adjacent to the Big Wood River in Blaine County, but reversed the district court's award of damages and remanded the case to the district court for further proceedings on the issue of damages. We also set aside an award of punitive damages stating that such an award must await the trial court's determination of compensatory damages.

On remand the parties introduced extensive expert testimony concerning the damages to the plaintiff's property as a result of the defendant's activities. After hearing the testimony the trial court concluded that as a result of the defendant's conduct the plaintiff's lots 17 and 18 have lost approximately 645 square feet of area containing 71.7 cubic yards of soil from erosion and are still subject to continuous erosion, that the lots can never be restored to their former condition and that riprapping to prevent continued erosion will cost $20,703.34. The court further found that the lots in their present condition have a combined value of $10,000, but had a combined value of $34,500 prior to the flood damage. The trial court found that the defendant's acts were responsible for 90% of the damage to the plaintiff's property and awarded the plaintiff $18,633, 90% of the cost of preserving her property, as compensatory damages. 10% of the damage was attributable to other upstream erosion control work performed by a person not a party to this lawsuit. The trial court also awarded $9,162.89 punitive damages to the plaintiff, a sum equal to her special costs and attorney fees in both proceedings.

In this appeal the defendant argues that the trial court erred in awarding the plaintiff $18,633 damages for erosion control riprapping along the river bank in front of her lots. The defendant contends that if any riprapping is necessary along that portion of the river, it has already been provided for in the prior action, *Campion v. Simpson*, No. 5918 (5th District Court, order entered January 6, 1976), in which action the court ordered the Idaho Department of Lands to provide the necessary erosion control work on approximately 300 feet of river bank and the court further ordered that the defendant Simpson pay the expense for such erosion control. However, in the present action the plaintiff Bradford disputed Simpson's claim that the erosion control to be

performed by the Idaho Department of Lands in the *Campion v. Simpson* case would reach to her property. The trial court ruled that it would not, and permitted the plaintiff to prove her damages for erosion control riprapping on the portion of the river fronting her lot.

The defendant contends that the trial court erred in its finding that the erosion control ordered to be performed by the Idaho Department of Lands in the *Campion v. Simpson* case would not extend in front of the plaintiff's three lots. In support of his argument, the defendant introduced in evidence a plan prepared in connection with the *Campion v. Simpson* case, *supra*, for opening a channel, which had been filled in by the defendant, in the Big Wood River downstream of the plaintiff's property. Also introduced in evidence was an application by the Idaho Department of Lands to the Idaho Department of Water Resources for a permit "to open channel filled illegally by Owen Simpson per order of district court, . . . ." The application describes the section of the stream to be altered as: "Adjacent to Sun Valley Subdivision, First Addition, and SENE (⅟₁₆th section of lot no.) of Section 13, Township 4 North, Range 18 East, B.M. in Blaine County." The application also states that the length of the channel or area involved in the alteration is 300 feet. Attached to the application is a small map of the area depicting the section of the river to be opened. According to the map the channel to be opened is downstream of the plaintiff's lots, although it is possible that a few feet of the channel to be opened may be immediately opposite the southernmost end of the plaintiff's lot 16, the southernmost lot. Also attached to the application is a letter to the Department of Lands from the Department of Water Resources granting the permit sought in the application on the condition that "the applicant shall be responsible for stabilizing the eroded areas after the first runoff season with rock riprap protection conforming to the department's minimum standards."

Michael Steele, regional supervisor of the Department of Water Resources, testified concerning the state's work in this area of the river:

"Q. (By Mr. Walker) In conjunction with this water permit, Mr. Steele, has the state actually performed some physical work in that stretch of the river?

"A. Yes, it has. . . .

. . . . .

"Q. Has the work been completed?

"A. Yes, it has with one exception. We asked and required that at some time within this next year, since we didn't know what was going to happen as far as water flowing through this section as far as erosion, that we would withhold the final riprap work to see what was going to happen this first year. And if it is going to be an erosive section, then we will require that rock riprap be placed along that area to stabilize it.

"Q. And it is your understanding that pursuant to the court order of the Fifth Judicial District Court that Mr. Simpson will be responsible for the costs of replacing whatever riprap along there that you require?

"A. Yes, that's correct.

. . . . .

"Q. No. But as far as you know, you still have jurisdiction to require this area of the river to be riprapped?

"A. That's correct.

"Q. And that's under the condition of which a water permit was issued?

"A. That's correct.

. . . . .

"CROSS EXAMINATION
"BY MR. SCHLENDER:

. . . . .

"Q. Mr. Steele, was any of the work that was performed adjacent to Lot 16—do you know about where that is located?

"A. This is just upstream?

"Q. Yes.

"A. Yes, I think I know that point.

. . . . .

"Q. Was the work that was in fact performed, was it done under the auspices or understanding that that would constitute erosion control with respect to Lot 16?

"A. We didn't address that problem because we didn't feel that there was a problem with the erosion that was caused upstream from this point. We didn't feel like this work would cause erosion upstream.

. . . . .

"REDIRECT EXAMINATION

"BY MR. WALKER:

"Q. So that there can be no problem, the work that has been done, was it not, was not intended to be riprapping, was it?

"A. It was not intended to be erosion control.

"Q. And the work that was done and the condition that it was left in, in your opinion, would not cause any further erosion or problems upstream, would it?

"A. That is correct. It would not. It was, if I might add, we did review these alterations with that in mind—that the area upstream and downstream from the alteration site be considered in the final analysis.

"Q. So Lot 16, which is upstream, and 17 and 18 would not be affected by this in your opinion.

"A. No, sir, it would not."

■ This evidence—the plan, the application, the permit and Mr. Steele's testimony—establish that the Department of Lands, pursuant to a court order, reopened the channel downstream of the plaintiff's property and is obligated, if the Department of Water Resources determines that it is necessary, to provide the riprapping necessary to protect the banks of the river from erosion. However, the evidence does not establish the geographic limits of that obligation to provide riprapping, i. e., whether it extends to the banks of the plaintiff's property which is upstream of the channel opened by the state. The defendant has proved that the state is obligated to provide the riprapping necessary to control erosion at his expense on the banks of a section of the Big Wood River, but the district court concluded that the defendant had not proved that the plaintiff's property is included within that section. The trial court in this action has found that riprapping of the banks of the river next to plaintiff's lots will be necessary, and the expense of that erosion control work will be $20,703.34. There is substantial evidence in the record to support those findings. As with other affirmative defenses, the burden was on the defendant to prove that the order entered in the related case of *Campion v. Simpson* provided for the riprapping of the same section of the river. *Harman v. Northwestern Mutual Life Insurance Co.*, 91 Idaho 719, 429 P.2d 849 (1967); *Paurley v. Harris*, 77 Idaho 336, 292 P.2d 765 (1956). The evidence, though conflicting, sustains the trial court's findings and they are affirmed.

The defendant also argues that the trial court erred in finding a loss of value of $24,500 in the plaintiff's lots. Though the evidence was conflicting, the trial court's findings are supported by substantial evidence and will not be disturbed by this court. I.R.C.P. 52(a); *Furness v. Park*, 98 Idaho 617, 570 P.2d 854 (1977).

■ In addition, the defendant assigns as error the award of punitive damages. In the prior appeal we concluded that the trial court's findings that the defendant's testimony in the first trial was wilfully false, misleading, malicious and wanton, and that his conduct was in malicious and wanton disregard of the plaintiff's rights was supported by substantial and competent evidence. *Bradford I, supra.* Accordingly, the award of punitive damages, which was based on the attorney fees and special costs incurred by the plaintiff, was proper. *Bradford I, supra; Cox v. Stolworthy*, 94 Idaho 683, 496 P.2d 682 (1972); *Jolley v. Puregro Co.*, 94 Idaho 702, 496 P.2d 939 (1972).

Judgment affirmed.

McFADDEN, C. J., and DONALDSON, SHEPARD and BISTLINE, JJ., concur.